[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 389.]

THE STATE EX REL. JONES, APPELLEE, *v.* CONRAD, ADMR., ET AL.,

APPELLANTS.

[Cite as *State ex rel. Jones v. Conrad*, 2001-Ohio-207.]

*Workers' compensation—Mandamus sought to compel Industrial Commission to grant relator's motion to enforce a settlement agreement that Bureau of Workers' Compensation initially approved and to vacate the order denying this relief—Court of appeals' judgment granting the writ affirmed—R.C. 4123.65(C), applied.*

(No. 00-240—Submitted April 24, 2001—Decided July 25, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-58.

_____

*Per Curiam.*

{¶ 1} Betty Jones, appellee, sought a writ of mandamus requiring appellant Industrial Commission of Ohio to grant her motion to enforce a settlement agreement that appellant Ohio Bureau of Workers' Compensation initially approved, and to vacate the order denying this relief. The Court of Appeals for Franklin County granted the writ, finding that the agreement was valid despite the efforts of Jones's employer, appellant "Board of County Commissioners Franklin County MRDD,"[1] to withdraw its consent. On the bureau's, commission's, and employer's appeal as of right, we affirm.

{¶ 2} Jones sustained an industrial injury in 1995, and her claim for "sprain lumbosacral" was recognized as compensable. In December 1997, Jones and the employer, a State Insurance Fund employer, filed a settlement agreement pursuant

_____

1. This is how all the parties have referred to the employer throughout the proceedings. Presumably the employer is the Franklin County Board of Mental Retardation and Developmental Disabilities.

to R.C. 4123.65[2] for a $62,000 lump sum. The bureau approved the settlement on January 30, 1998, which commenced the thirty-day cooling-off period the statute requires.

_____

2. R.C. 4123.65 provides:

"(A) A state fund employer or the employee of such an employer may file an application with the administrator of workers' compensation for approval of a final settlement of a claim under this chapter. The application shall include the settlement agreement, be signed by the claimant and employer, and clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable and that the parties agree to the terms of the settlement agreement provided that the agreement need not be signed by the employer if the employer is no longer doing business in Ohio. If a state fund employer or an employee of such an employer has not filed an application for a final settlement under this division, the administrator may file an application on behalf of the employer or the employee, provided that the administrator gives notice of the filing to the employer and the employee and to the representative of record of the employer and of the employee immediately upon the filing. An application filed by the administrator shall contain all of the information and signatures required of an employer or an employee who files an application under this division. Every self-insuring employer that enters into a final settlement agreement with an employee shall mail, within seven days of executing the agreement, a copy of the agreement to the administrator and the employee's representative. The administrator shall place the agreement into the claimant's file.

"(B) Except as provided in divisions (C) and (D) of this section, a settlement agreed to under this section is binding upon all parties thereto and as to items, injuries, and occupational diseases to which the settlement applies.

"(C) No settlement agreed to under division (A) of this section or agreed to by a self-insuring employer and the self-insuring employer's employee shall take effect until thirty days after the administrator approves the settlement for state fund employees and employers, or after the self-insuring employer and employee sign the final settlement agreement. During the thirty-day period, the employer, employee, or administrator, for state fund settlements, and the employer or employee, for self-insuring settlements, may withdraw consent to the settlement by an employer providing written notice to the employer's employee and the administrator or by an employee providing written notice to the employee's employer and the administrator, or by the administrator providing written notice to the state fund employer and employee.

"(D) At the time of agreement to any final settlement agreement under division (A) of this section or agreement between a self-insuring employer and the self- insuring employer's employee, the administrator, for state fund settlements, and the self-insuring employer, for self-insuring settlements, immediately shall send a copy of the agreement to the industrial commission who shall assign the matter to a staff hearing officer. The staff hearing officer shall determine, within the time limitations specified in division (C) of this section, whether the settlement agreement is or is not a gross miscarriage of justice. If the staff hearing officer determines within that time period that the settlement agreement is clearly unfair, the staff hearing officer shall issue an order disapproving the settlement agreement. If the staff hearing officer determines that the settlement agreement is not clearly unfair or fails to act within those time limits, the settlement agreement is approved.

"(E) A settlement entered into under this section may pertain to one or more claims of a claimant, or one or more parts of a claim, or the compensation or benefits pertaining to either, or any combination thereof, provided that nothing in this section shall be interpreted to require a claimant to enter into a settlement agreement for every claim that has been filed with the

2

{¶ 3} Five days later, on February 4, 1998, the county's workers' compensation representative faxed this message regarding the Jones settlement to the bureau:

"Please withdraw our lump sum application – it was filed in error. We are still interested in settling the claim, just not for the $62,000."

{¶ 4} The county did not also send this message to Jones, even though R.C. 4123.65(C) required written notice to the bureau *and* the claimant-employee.

{¶ 5} On February 11, 1998, still within the cooling-off period, the bureau did provide notice to Jones of the county's intent to revoke consent in findings denying the settlement application. The bureau's order advised:

"The application is denied—All parties do not agree with the settlement terms.

"Per letter from the employer representative dated 2-4-98, the employer is withdrawing approval for the settlement."

{¶ 6} After the cooling-off period passed, Jones moved for enforcement of the settlement agreement, arguing that the settlement remained binding because the county had not withdrawn consent with sufficient notice. A commission staff hearing officer denied this motion, explaining:

"The employer sent notice on 2/04/1998 to the Bureau of Workers' Compensation that they were withdrawing consent. This notice was not sent to the claimant as required by statute. Thereafter, on 2/11/1998, the Bureau of Workers' Compensation issued an order indicating that the settlement application was being denied based on the employer's withdrawing of their approval. This order was sent to all parties and their representatives.

---

bureau of workers' compensation by that claimant under Chapter 4121., 4123., 4127., or 4131. of the Revised Code.

"(F) A settlement entered into under this section is not appealable under section 4123.511 or 4123.512 of the Revised Code."

"This order is found to have fulfilled the statutory requirement that a consent withdrawal * * * be communicated to all parties."

{¶ 7} On Jones's request for reconsideration, the commission agreed to review the cause, but only one commission member agreed with Jones, leaving a majority in favor of denying the application to enforce the settlement agreement. The dissenting commission member reasoned:

"I specifically reject the administrator's argument that the order issued 2/11/1998 was a withdrawal of consent from either the administrator or the employer as mandated by R.C. 4123.65. The language of the order was not that the administrator was withdrawing consent. * * * It does not state that the administrator is objecting to the terms of the settlement agreement. Therefore, this order cannot be construed as a written notice of the withdrawal of the administrator's consent. The administrator never withdrew consent. Furthermore, the order cannot be construed as written notice from the employer to the employee that it is withdrawing consent. The statute clearly provides for the manner in which an employer can withdraw consent. The employer is to provide written notice to both the employee and the administrator. The employer never sent written notice to the employee (claimant) that it was withdrawing consent. The employer sent written notice to the Bureau on 2/4/98; however, this notice was never sent to the employee (claimant) as contemplated and required by R.C. 4123.65(C).

"The Bureau and the employer argued that the Bureau's order of 2/11/98 satisfied the intent of R.C. 4123.65 because basically the Bureau was acting on behalf of the withdrawing party (the employer) by providing notice to the other party (the employee). R.C. 4123.65 does not provide for the Bureau to act on behalf of any of the other parties in providing written notice to the other party of the withdrawal of consent from the settlement agreement. In state fund claims, there are three interested parties, each possessing its own interests and goals in a settlement. The Bureau cannot act on behalf of one party to satisfy any statutory

4

obligations that party may have in effectuating a settlement agreement. The legislature has established a precise manner [in which] an employer, employee, or administrator may withdraw from the settlement agreement.

"I would find that because the employer did not comply with the clear statutory requirements of R.C. 4123.65(C), there was a valid settlement agreement upon the expiration of thirty days following the 1/30/98 letter from the Bureau. I would [therefore] find that the Staff Hearing Officer order contained clear mistakes of law and fact by finding the following: 'This order (the 2/11/98 Bureau order) is found to have fulfilled the statutory requirement that a consent withdrawal be communicated to all parties.' "

{¶ 8} The court of appeals agreed with the dissenting commission member's reasoning, and so do we. The rule is that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply the rules of statutory interpretation. *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057, 1061, citing *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161. "In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in * * * a particular statute—we rely only on what the General Assembly has actually said." *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 149, 742 N.E.2d 1128, 1134 (Moyer, C.J., dissenting).

{¶ 9} R.C. 4123(65)(C) unquestionably required the employer to notify Jones in writing of its intent to withdraw consent from this settlement agreement. Absent such notice, the settlement agreement became valid upon expiration of the cooling-off period, and Jones was entitled to enforce it. The court of appeals recognized this, and we therefore affirm its judgment granting the writ of mandamus. Accordingly, the commission is ordered to vacate the order denying Jones's application and to issue a new order enforcing the settlement agreement.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

*Ronald J. Koltak* and *Peter J. Gibson,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Craig E. Gould,* Assistant Attorney General, for appellants Industrial Commission and Bureau of Workers' Compensation.

*Ron O'Brien,* Franklin County Prosecuting Attorney, and *Robert E. Williams,* Assistant Prosecuting Attorney, for appellant Board of County Commissioners, Franklin County MRDD.

———————————