John A. Sabol, pro se.

THE STATE EX REL. WISE, APPELLANT, *v.* RYAN, ADMR., ET AL., APPELLEES.

## [Cite as *State ex rel. Wise v. Ryan,* 118 Ohio St.3d 68, 2008-Ohio-1740.]

(No. 2007–0660—Submitted February 5, 2008—Decided April 16, 2008.)

---

**Per Curiam.**

{¶ 1} At issue is the validity of appellant Robert D. Wise's 1997 settlement of his workers' compensation claim. After Wise fractured his leg at work, his claim was allowed for "fracture left tibia—closed." In November 1995, he underwent surgery for that condition and was told that he was at risk for posttraumatic arthritis.

{¶ 2} Wise received temporary total disability compensation and continued to be treated for the condition. One year after the injury, his attending physician stated, "As far as long term, I think that his left knee will not be normal. He is going to have a slight amount of valgus instability in the left knee secondary to the depression of the fracture, as well as more than likely an earlier onset of arthritis secondary to the trauma, than he will on the other side. The onset of this is unknown as far as time goes and he can follow this along through his life."

{¶ 3} In April 1997, Wise received a letter from his employer's third-party administrator:

{¶ 4} "Upon discussing this claim with the employer, it is our mutual opinion that a full and final settlement may be in your best interest. Settlement takes into account the future costs and available awards. We are prepared to offer $2,000 as a full and final settlement. Please let us know if you are in agreement with this settlement amount by signing the enclosed application * * *. The application will then be filed with the Bureau of Workers' Compensation.

{¶ 5} "When the Bureau has reviewed our agreement, an order will be issued and sent to all parties. Approximately 30 days after the order is mailed, a check will be sent to you as a full and final settlement. This will mean a final closure of this claim against [the employer]."

{¶ 6} Wise was given a standard "Settlement Agreement and/or Application for Approval of Settlement Agreement" form used by appellee Bureau of Workers' Compensation. The form instructed the parties to "clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable," a requirement of R.C. 4123.65(A), which addresses applications for approval of final settlements. In this instance, that section of the form was left blank.

{¶ 7} Wise signed the form on June 2, 1997. At the time of signing, Wise, who has an IQ of 72 and reads at a fourth-grade level, was not represented by counsel.

{¶ 8} The bureau approved the settlement agreement the next month. Five years later, Wise, through newly retained counsel, moved to vacate the agreement based on Wise's lack of representation and competency at the time of signing.

{¶ 9} A district hearing officer for appellee Industrial Commission of Ohio denied the motion. She found that Wise had not established any of the prerequisites necessary to invoke the commission's continuing jurisdiction under R.C. 4123.52. She also found that the third-party administrator's letter to Wise satisfied the requirements of R.C. 4123.65(A) "to clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable" and finally found that Wise was competent enough to understand the terms of the agreement at the time of signing and had also had guidance from his father.

{¶ 10} Wise appealed and presented for the staff hearing officer's review a mental-function-capacity evaluation prepared by Dr. Beal D. Lowe. Dr. Lowe concluded that Wise was incapable of "understand[ing] the consequences and ramifications of his signature to the Settlement Agreement."

{¶ 11} The staff hearing officer affirmed the district hearing officer. While the staff hearing officer made no further finding on the questions of continuing jurisdiction or the adequacy of the agreement, he did find Wise competent to enter into the settlement agreement and gave reasons for that finding.

{¶ 12} On November 14, 2002, the commission heard Wise's appeal. Two commissioners voted to affirm the decision of the staff hearing officer, stating:

{¶ 13} "[T]he * * * Commission * * * does not have authority to invoke continuing jurisdiction for the reason that the injured worker failed to meet his burden of proving that the Staff Hearing Officer order of 07/08/2002 contained a mistake of fact or law of such character that remedial action would clearly follow. The Staff Hearing Officer stated, 'There is no evidence that any party, the

Bureau of Workers' Compensation or the employer tried to take advantage of the injured worker by settling the claim.' More specifically, the Industrial Commission finds, pursuant to the provisions of R.C. 4123.65, that the injured worker failed to provide sufficient evidence that the settlement agreement was 'clearly unfair' or a 'gross miscarriage of justice.' There is no basis, therefore, for the commission to invoke its continuing jurisdiction."

{¶ 14} A dissenting commissioner wrote:

{¶ 15} "The Ohio Supreme Court has recently and clearly stated that all the requirements specifically enumerated in R.C. 4123.65 must be strictly adhered to before a settlement of a workers' compensation claim can legally be effectuated. * * * In the instant case, one requirement has not been met. Therefore, no valid settlement has taken place in this claim.

{¶ 16} "R.C. 4123.65 states that a settlement application 'shall * * * *clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable* (.)' ([E]mphasis added.) The wording of R.C. 4123.65 unambiguously requires that the parties explain, in the settlement application, why they wish to settle the claim. It is undisputed that this criterion has not been met in this case. * * *

{¶ 17} "R.C. 4123.65 requires that the settlement agreement be sent to the Commission, who shall send such to a staff hearing officer, and that 'The staff hearing officer shall determine * * * whether the settlement agreement is or is not a gross miscarriage of justice.' It is impossible for a hearing officer to determine whether a settlement of a claim is unjust when no rationale is provided that justifies settling the claim.

{¶ 18} "It could be argued that this is precisely the type of case the legislature had in mind when it mandated that the parties to a settlement application provide the reasons why the parties feel settling a workers' compensation claim would be beneficial to them. The claimant in the instant case is mentally retarded and went through school in the special education program. The claimant has a fourth grade comprehension level, but the settlement agreement at issue is obviously written in legal wording that is well beyond that which could be read and understood by a fourth-grader. Therefore, for the minor sum of $2,000, the claimant assigned away his rights to his workers' compensation claim despite the fact that the claimant has already received $14,000 in medical treatment and $3,500 in compensation in this claim and despite the fact that the medical evidence shows that the claimant will likely suffer lifelong medical problems due to the serious injuries he sustained on account of this industrial accident. The claimant was unrepresented at the time he signed the settlement agreement and the undisputed testimony and medical evidence produced at hearing shows that

the claimant lacked the intellectual capacity to read, let alone understand, the settlement agreement he signed."

{¶ 19} In mandamus, the Court of Appeals of Franklin County upheld the commission's order. The court conceded that the agreement did not comply with R.C. 4123.65(A), but held that the noncompliance was irrelevant, given the staff hearing officer's review of the settlement's fairness pursuant to R.C. 4123.65(D). The court of appeals also found that the competency determination was supported by evidence.

{¶ 20} This cause is now before this court on Wise's appeal as of right.

{¶ 21} To invoke the continuing jurisdiction necessary to revisit the staff hearing officer's 1997 settlement approval, one of five prerequisites must be met: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 459, 692 N.E.2d 188. In this case, the approval of a settlement application that did not comply with the mandates of R.C. 4123.65(A) satisfies the fourth and fifth prerequisites. Accordingly, the commission not only had continuing jurisdiction to reexamine the settlement agreement, but was required upon review to set it aside.

{¶ 22} R.C. 4123.65(A) states that a settlement application "shall * * * clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable." It is undisputed that the settlement application did not do so. Both the commission and the court of appeals, however, disregarded this language, focusing instead on R.C. 4123.65(D):

{¶ 23} "The staff hearing officer shall determine, within the time limitations specified in division (C) of this section, whether the settlement agreement is or is not a gross miscarriage of justice. * * * If the staff hearing officer determines that the settlement agreement is not clearly unfair or fails to act within those time limits, the settlement agreement is approved."

{¶ 24} The commission and court of appeals reasoned, in effect, that so long as the settlement agreement is "not clearly unfair" or a "gross miscarriage of justice," the requirements of R.C. 4123.65(A) are irrelevant. This view cannot be endorsed. R.C. 4123.65(A)'s language is mandatory, not permissive. We have, moreover, indicated that the requirements of R.C. 4123.65 demand strict compliance.

{¶ 25} *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 750 N.E.2d 583, considered R.C. 4123.65(C)'s requirement that written notice of an employer's intent to withdraw consent to settle be sent to the bureau administrator and the claimant. The employer did not send written notice to the claimant, who

eventually filed a mandamus petition to compel enforcement of the agreement. We held for the claimant, writing:

{¶ 26} "The rule is that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply the rules of statutory interpretation. * * * 'In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in * * * a particular statute—we rely only on what the General Assembly has actually said.' *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 149, 742 N.E.2d 1128, 1134 (Moyer, C.J., dissenting).

{¶ 27} "R.C. 4123.65(C) unquestionably required the employer to notify Jones in writing of its intent to withdraw consent from this settlement agreement. Absent such notice, the settlement agreement became valid upon expiration of the cooling-off period, and Jones was entitled to enforce it." Id. at 392, 750 N.E.2d 583.

{¶ 28} In the proceedings at bar, R.C. 4123.65(A) unquestionably mandates the written enumeration of the circumstances favoring settlement. Under *Jones*, noncompliance is not inconsequential, nor is it excused by a staff hearing officer's review of the agreement. It is indeed impossible for a hearing officer to evaluate whether settlement is just when there is no reasoning provided that justifies settlement.

{¶ 29} Accordingly, we hold that the commission abused its discretion both in refusing to invoke continuing jurisdiction and in upholding the validity of a settlement agreement that did not satisfy R.C. 4123.65(A). In so holding, we find it unnecessary to address the issue of Wise's competency to settle his claim.

{¶ 30} The judgment of the court of appeals is reversed.

Judgment reversed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

CUPP, J., concurs in judgment only.

———

Thompson, Meier & Dersom and Adam H. Leonatti, for appellant.

Marc Dann, Attorney General, and Derrick L. Knapp, Assistant Attorney General, for appellees.